Case number 22-5264, Michael W. Langeman appellant versus Merrick B. Garland in his official capacity as Attorney General of the United States et al. Mr. Berger for the appellant, Mr. Sturgill for the appellate. Mr. Berger, good morning. Thank you, thank you very much. Whenever you're ready. Okay. This is a case that is exclusively focused on process, not on the merits. There's not going to be any discussion of merits in this case. The employer of this civil servant, civil servant, he's been employed for 19 odd years. The employer claims that it can summarily discharge him, remove him from service without notice, without an opportunity to be heard on any charges, simply because it claims that there were exigent circumstances, compelling circumstances, such as safety to the public, fellow employees. But yet, nowhere in its discharge papers did it identify in any way what those exigent circumstances were. Okay, I just, go ahead. I just want to start out because you said it's focused on process. Yes. So if we're talking about a property interest, are you talking about the property interest in the expectation of continued employment or property interest with respect to an expectation of process? It's a property interest in the expectation of continued employment. That there is an objective basis provided by his employer that tells this gentleman that he cannot be summarily removed unless there are exigent circumstances. And the lawyer is obligated to at least identify what that consideration is. Where does, I actually have the same question, but let me ask it this way, which is, where does the free memo limit the substantive grounds on which an employee can be terminated? I don't think it does. Yeah, well, at the, at the free memo itself, these protections that it's a due process will not apply to extraordinary cases which require immediate summary dismissal. I must preserve discretion. And then it defines what conditions the discretion. I preserve discretion where there's an exigent circumstance. In order to distinguish between one category of circumstances where the normal processes apply and a different category of circumstances where summary processes are allowed, allowed under the memo. They give examples, safety of the public, safety of fellow employees, national security interest, or other compelling circumstances. Now, we have experience in understanding what a compelling circumstance is without identifying what that danger is. After all, we're dealing with an employee who was employed for six years after the events in question that are being relied upon to summarily dismiss him. He continued to function in an exemplary way. So, if you're going to remove him without any opportunity to be heard at all, cite an exigency. Tell us why he continues to be a danger to the public. It doesn't happen, they don't say a word about it. If you're right about that, then they didn't give him the process that the memo says they were supposed to give him. You're not arguing violation of the memo. No, no. The memo's procedural protections. No, no. You have to argue that the memo limits the grounds on which they can fire him, substantive grounds. That's correct. And that's what I'm not seeing. You're saying there's a line between types of process. Sure. Well, we have something called constitutional minia. What is a constitutional minia? Just simply notice an opportunity to be heard, which differs from the process that's defined in the free memo. Only if there's a protected property. So I'm arguing that it seems to be almost like an oxymoron with the free memo here, which says, look, we could summarily remove you. You're an employee at will only if you're a danger to the public. I mean, that's what they seem to be saying. And how do we reconcile those two concepts? We can't. So show me that you're a danger to the public. Give me another Fifth Amendment. Give me a due process, an opportunity to make a pitch to claim I'm not a danger to the public. Give me an hour. Bring me in a conference room. Do something to give me an opportunity to make that argument. Which would this case be different if they explicitly stated one of those reasons as to the firing? Well, they substantively they do. What they say is they do say. But, I mean, I'm trying to get a sense of you seem to be asking for more detail. Like, in other words, those are categories, but you seem to be asking for more detail. And maybe is this different in that regard? No. They could tell me, hey, you're a danger. They could say something, you're an imminent threat, which is what this provision provides. They could say that you're a national security risk. They could say anything they want. I don't really care too much about that. What I care about is I just have an opportunity. Because what's the objective expectation of someone like this? I cannot be summarily fired unless I pose a threat. That's really what he's thinking. But I can be fired for any reason. It doesn't say that. If it did, I wouldn't be here. He's an at-will employee. If it said that, if it simply said, which is what it really should have said, I could remove any of them. Suppose they want to fire him for a reason that's not compelling and exigent. He's a B-plus employee instead of an A-plus employee. They can do that. They have to follow the rules. The memo does not restrict their ability to do that. Your Honor, I beg to differ. If they want to fire him for a non-exigent reason, they have to follow the rules. Give him 30 days' notice, give him an opportunity to be heard, give him charges. That's what they have to do because that's what they promulgated. That's the expectation here. So now they want to summarily remove him? Bye-bye. As you say, an employee at will? It's fettered. It's not unfettered. So, counsel, I understand your argument to be that the free memo's reference to exigent and compelling circumstances creates a substantive limit on how somebody can be summarily dismissed. But that language, how would you distinguish this case from Kentucky Department of Corrections v. Thompson, where there was similar language? It was a procedure that said visitors could be excluded when officials find reasonable grounds to believe that the visitor's presence in the institution would constitute a clear and probable danger. It sounds like that's a limit, but we held that it was not. It's not sufficiently mandatory. It doesn't sufficiently cabin discretion. And I don't see how this case is distinguishable from that case in terms of the specificity of the mandate. Well, I would argue that when you're dealing with a level of reasonability, that is, the difference between what is reasonable under the circumstances versus what is exigent or what is a safety to the public threat or... Well, this one says a clear and probable danger to security. It seems similar. Well... We said that's not to create a property interest. Well, I would argue in a case like that, that the... This court, though, has issued other decisions, you know, which seemingly are inconsistent with that. Looking at the... Very quickly. Very quickly. But I looked at... Block v. Powell. You know, and the tar pay court, which ruled that if the statute leaves a benefit to the discretion of the government official, no protected property interest. I'm not familiar with the Texas case. I'm sorry. However... It's a Supreme Court case. Okay. I understand. Thank you. The point is, the Supreme Court has also ruled in Webster v. Doe that if there is a, what I call, meaningful substantive standard, a meaningful substantive standard, that conditions summary dismissal or that conditions discretion. I'd have to look at the Supreme Court case to see whether they consider that to be a meaningful standard, but that's what the Supreme Court said in Webster v. Doe at 486 U.S. 592. I don't see how we can distance ourselves from a meaningful standard in these cases here. How is it a meaningful standard? Like, how would we review a decision that something's... Well, is he a danger to the public? Is he a danger to the public? Is he a danger to his fellow employees? Is there a national security interest at stake here? And I'm not even asking this court to make that decision. I'm just asking for a remand back to the employer to give him an opportunity to make his pitch. That's all I'm asking for. I'm not even asking for judicial review. Now, it's possible that the Supreme Court case you cite forecloses judicial review. I understand that. But I'm asking that only his employer be given the opportunity, be given the opportunity before his employer. I'm not asking for this court to make that decision. I'm asking for his employer to make that decision. I'm just asking for a remand. That's it. Give me my hour. Give me my half hour, whatever it is. I think that Texas court actually was talking about whether a judicial review was foreclosed or not. I'm not asking that. We also have another D.C. Circuit course, Ashton v. Silberleti, albeit 1979, but it's dealing with an FBI employee handbook. And in that handbook, it was ambiguous, and so then they offered the property interest in that regard. In terms of the language overbroad in that regard? Yes. So I kind of look at this case as any employment at will case allows for a person to be fired for any reason, good reason, bad reason, no reason, unless there is some mandatory language or broad language that requires there to be discretion in either a progressive discipline policy or things of that nature. And so, you know, back to Judge Pan's question and even Judge Katz's about these limitations. If you don't have some absolute mandatory limitations on that process, then how are we to believe that there is such a cause of action available to you? I think the standard, as I understand it, is is it objective enough for an employee to believe that he or she would have an expectation that they would not be summarily fired in the absence of a threat? Where are you getting that standard? I have not heard that standard or seen that standard cited anywhere. My understanding is the standard is that the source has to have explicitly mandatory terms or unmistakably mandatory terms that cabin the discretion of the agency. I could locate it. I could locate it. I've seen it. But I believe that is standard. I'll find it when I get to my rebuttal, Your Honor. That's fine. Okay. But then I'd like to move on to your liberty interest. Yes. Okay. It seems to me that your liberty interest arguments hinge on an allegation. There has to be an allegation that the government, the agency, the employer has disseminated the information about the employee. And I just don't think that's adequately pled in your complaint. Or can you point to where it is adequately pled? Yeah, I would say that the most concrete example of that is the CNN report that was actually cited by the – But we don't know who gave that information to CNN. We don't. But is it fair to the appellant at this early stage dismiss a complaint without perhaps the benefit of some discovery? That would be my only claim in that. I mean, you're right. We don't know the source of that CNN report that actually names him as the individual that was responsible. He was fired and, you know, no comment. But I think that he should be given the opportunity to obtain some discovery. After all, it is an allegation. If it's true and all we have to claim is that the government was the source of that information, he would have a cause of action. It seems, though, that there could be many different sources for that information, and it doesn't seem fair to conclude that it was more likely than not the government, right? I'm with you on that. But all I would say is that I think it's just premature to dismiss a complaint without giving him some opportunity to engage in discovery, and then a motion can be renewed at some later point. That's my claim on that situation. The closest you have in the complaint is your allegation that the defendants published through official channels these allegations for review by the public at large. Can you elaborate on that? Are we talking about the public release of the OIG report? Are we talking about naming the agent in the media, both? Yes. Naming the agent in the media in that CNN report. That is the only report that names him. The OIG report is that. Well, there's actually more than that. I'm not a scare opponent about that. The OIG report was redacted. People would be able to figure out who these people are very easily. They refer to him as a supervisor in some reports. They name him in other reports. It's quite clear who he is. So the stigma is there. You didn't plead. The OIG report names him as a supervisory special agent in the Indianapolis office. It gives some other details. Supervised the violent crimes against children. Talks about when he joins the Bureau. Talks about one of his prior jobs. I assume you all would know this, but the complaint doesn't have any elaboration on whether that set of descriptors would clearly identify him. Understood. Actually, it was the respondent who supplied those descriptors. And that just goes back to my point that they're in the best position to know. I assume your client knows how many special supervisory agents there were in the office. If that's the point, I understand. If there's a report that says the 40th President of the United States did something, we sort of know who that is. I understand. But those descriptors came from the respondents. It didn't come from my client. It came from the respondents. They actually articulated all the various news articles. They put it in there because they wanted to show how horrible he was. Okay, I get it. But by doing that, they've made my point that he's been stigmatized. That's all. And I just want the opportunity to do some discovery on that so we can flesh out the record. I just think it's premature right now at the complaint stage. On your stigma theory, not reputation plus, but stigma, our cases seem to say that you have to plead that the plaintiff sought alternative employment and couldn't obtain it. There's just nothing like that in the complaint. Well, I think it's clearly implied that when you're under these circumstances. It seems like an obvious inference, but you have to plead the elements. I understand that. But I do believe that there's enough in there to suggest that he was hampered, not completely foreclosed. And I think it's clearly obvious that hampering is associated with stigma because he had reached public contempt in the news. He was stigmatized. Okay. One little issue, only because I would ask the defense to respond to this. We're hearing a motion to dismiss. I'm trying to tab in everything to the complaint, which is sufficiency of applications and or whether or not any such cause of action exists. And at least with respect to the liberty interest, it appears that the district court assumed without deciding that there was a liberty interest, but then decided that there was adequacy of the process. Yes. And so do you want to speak to whether or not that kind of went to the merits? Yes, very quickly. The process that the district court was referring to was the fact that he was the subject of an Office of Inspector General investigation. He sat for two interviews, and he was questioned about his role in this matter. The fact that you are responding to fairly tailored questions in an investigation does not rise to due process. He's simply responding. He doesn't have the opportunity to see what the charges ultimately are. He doesn't have an opportunity to see all the statements that back up these various charges. My question goes to whether or not at this stage all of that should be considered. Absolutely. Absolutely. Because simply responding to questions in an interrogation in which you're compelled to be there certainly doesn't in no way inform him ultimately of the basis for their claims and the merits or the veracity of the statements that are being made against him. He doesn't know. He's just answering very specific, narrow sets of questions that the OIG has an agenda, not a bad agenda, an agenda to ask. What does he know? Assuming we reach this question, why isn't it sufficient process that he was shown the draft OIG report and had an opportunity to comment and respond? Well, what he was shown is simply summaries. He doesn't see the entire set of statements. He was only shown what is known. Was he shown a draft of the report? I could be wrong. No, no, no. He was shown only the summaries. The OIG agents summarized the various statements that he made. But he was shown that. But, again, that's the time. But if you're talking about the level of process required to justify termination, assuming a liberty interest, I mean, it's not a criminal process. I don't know of any cases that say he has discovery rights. It's just notice and an opportunity to be heard. Right, but he's making his pitch only to the Office of Inspector General. He's telling them, first of all, he's already, the OIG agent has already synthesized and summarized this information. We don't have access to the actual science board statements. We don't have access to any of that. And we're not making a pitch to a deciding official. Hasn't the government waived any argument in this regard by not defending the process on appeal? Has the government waived it? They have not defended it. I would agree. It doesn't seem to be an issue. And just to be clear, quickly, the CNN report's not in the complaint. No, it's not. Nope, it was in the motion to dismiss. I can only reiterate the one point. I just think it's premature to dismiss the liberty claim for that reason. Okay, thank you. We'll give you some rebuttal. I appreciate that. Thank you. Mr. Sturgill, you're up. Please, the court, Lowell Sturgill from the Department of Justice, representing the government. While the FBI has chosen to provide its employees with due process protections... Maybe lower the mic. Not coming through clearly. I hope that's better. Time will tell, I guess. While the FBI has provided its employees with due process protections, it has also reserved the discretion to act summarily and dismiss employees summarily. And the reason it needs to do that is in order to maintain public confidence in the work of the FBI and to protect the public. So in this case, the free memo itself uses discretionary language, and it fully reserves that discretion without creating any substantive limits. A couple of points on that that are helpful. First, a term like compelling is not itself explicit enough. And the test here from the court's case is whether the language in question is explicit. So a term like compelling is inherently not explicit enough to create a protected property interest. But beyond that, if you look at the language, there's discretionary language even in describing compelling. Free memo says compelling considerations if it may be compelling. So maybe is clearly discretionary language. So it seems like your position is that the words extenuating or compelling, all those qualifying words, do no work at all. Is that correct? So first of all, they're not specific enough to limit the discretion of the FBI for purposes of determining whether there's a protected property interest. If I'm the FBI director and you work for me and I just don't like your tie, it just really bothers me, it offends me, and I say this is extraordinary and compelling and you're fired, is there any recourse to you? So there's no protected property. And the employee couldn't say, I deserve some kind of opportunity to make a case for you for why this is. So there's no recourse. There's no recourse. At all. If you're saying there's unfettered discretion in the FBI director or assistant directors and above to determine what's an extraordinary or compelling circumstance. Well, the employee can bring a Title VII suit or some other kind of cause of action. But what we have in this case... What's the protected class of people who have ties that the FBI director doesn't like? Well, it may be that that would not create it, that would not support a Title VII action. But again, these are at-will employees. So your answer is there's no recourse to somebody like that. The FBI director or assistant directors and above can fire somebody for any reason or no reason at all if they characterize the reason as compelling. Well, that's the way it is with all at-will employees. They can bring Title VII actions, but if they don't have a Title VII action, you can't bring a complaint unless you either have a statutory cause of action or a constitutional one. So I think in your hypothetical, there wouldn't be. But again... So those words do no work. Well, they certainly... First of all, they guide the public in understanding what the FBI is doing, what the purpose of all of this is. So they serve that purpose. And then I think they would help the FBI understand what this is all about and how it should use its authority. But does it actually limit that authority? No. In Torpey Doe, for example, this court said that where an agency reserves discretion and doesn't require itself to explain the reasons for what it's done, then there's no protected property. And that's what you have here. You have language that goes out of its way to reserve discretion or summary dismissals. And nothing in this language requires the FBI to give any reason whatsoever for summarily terminating an employee. So under Torpey Doe, that is the end of that claim by itself. And also I mentioned in the Crooks case, this court held that a standard that was... An agency could terminate somebody for the best interest of the program. Well, that was deemed not explicit enough to create a protected property interest. And that's really you have something very similar here where you have something language-like may be compelling is extremely broad. So for all those reasons, we think it's clear that the free memo expressly reserves discretion for summary terminations and definitely doesn't create any kind of explicit... So you indicate allows this unfettered discretion, but yet it also has the limitation of the categories. How do those two match up? So those are not... The key is, as the court, I believe, talked about before, are these substantive limitations that cabin discretion? And here they don't. Because first of all, again, as in Torpey Doe, if you had something like that, then that would only cabin discretion if the language said, okay, well, FBI, you have to actually explain to the employee why you fired them. So there's nothing like that here, leaving it completely open for the FBI to engage in this kind of summary dismissal. What is the discretion that has to be constrained? Torpey Doe says a significant limit on substantive discretion. Is it the discretion to fire him or the discretion to fire him summarily? Because I think there probably is a judicially enforceable limit on the discretion to fire summarily. Safety to the public, fellow employees, national security, other compelling considerations. I mean, it's not the brightest of lines, but it's a high bar. It's language. Compelling is a term that's judicially enforced throughout all of constitutional law, right? It doesn't seem unmanageable. But the problem I'm having is, even if he gets over that hurdle, that just means he gets more process. But at the end of that, he can still be fired for any reason, at least within this memo. So that's correct. The memo sets out process but doesn't require a particular result. And that was the case in the Kentucky case, I believe, where the court in the prison context addressed terms like public safety and prison safety but said that that didn't create a protected liberty interest because it didn't go to the next step and say, OK, well, if you fall within those categories, then the government has to... That one said, if you fall within the category, you may be excluded from the prison, right? Something like that. Right, but it also contained... The Supreme Court held that elsewhere in the relevant provision. The provision included terms that were discretionary and made it clear that there was not something that had to be done even if it fell within... This one is of the form, you may not be summarily terminated unless some predicate is met. And the predicate is public safety, national security or other compelling considerations. So, looking at page 13 of the appendix, which I'm sure you're at, first thing is, again, it says... I think this is really important. It says when it's identifying these specific considerations, the plaintiff says are explicit. It says other compelling interests that may be at stake. So it's not even saying, oh, if you can show a compelling interest, then that's a substantive limitation. It's as wide open as it could be. Basically, OK, anything that even could be a compelling interest, well, that's not something that you find in constitutional law or anywhere else that you would address. So it's not like you can just map a free exercise claim onto this language because it's not the same. And that wouldn't make sense anyway because, again, the whole point of doing this is so that the FBI can act when it's necessary in its judgment to maintain public confidence in the agency. And here what we have was... I'm not sure that's a fair summary of the whole memo. I mean, the principal thrust of the memo is to codify a set of procedural protections that are the default rules for terminating FBI agents. And this is the exception for extraordinary cases. Well, again, I'm repeating myself, but I think if this language, this discretionary language, had went on to say, OK, well, here are some public order, compelling interests, some other identified concepts, and you must then explain to the employee what the grounds for the summary dismissal were, OK, that would be very different. That would be like a carpeted dove, but you don't have that. And I think the mere absence of that is enough to take this case out of the protected property interest category. But even if it doesn't, again, Crooks said that language saying best interests to the government is not sufficient to create a protected property interest. And I don't see how something that may be compelling is really any substantially different from best interests of the government. Now, the district court assumed that there was an existence of a liberty interest, but doesn't really actually analyze, you know, those allegations in that regard. So then we kind of skipped to that there was adequate process, but we're on a motion to dismiss. So talk to me a little bit about whether that went a little further than it should have. Also, because I believe that you all stated you don't want us to decide that. So give me an opportunity to kind of explain the two. Sure. So as our brief explains, we think it's a better practice for the court not to address the issue of whether Langevin's two compelled OIG interviews provide him all the process that he was entitled to, and that's for a couple of reasons. First of all, we say it has to do with the independence of the Office of the Inspector General. So by statute, that office is separate from the FBI. What it does is what it did here. It conducts investigations, and then it issues reports, and it notifies the employing agency of what those results were. So then it's the employing agency's job to take any act, to decide independently whether any employment action is necessary. So we think that separation is a reason for the court to think to not address this and to just address the case on the grounds that we've given you. You're being a little coy with us, so let me just ask you directly. Suppose we think there is a liberty or a property interest. We then must reach the question whether the district court was right on sufficiency of process. Are you confessing error on that, or are you defending it as a next best alternative ground for you to win on appeal? So we are not confessing error, and we again are just asking the court not to reach the question. Well, then you're putting us in a pretty tough position, right? If we disagree with you on the threshold issue, we must decide that question, and you've given us no help. Well, Your Honor, we have the department and the government has carefully considered this question, and it's come up with the position that we are not prepared to defend the district court's grounds for the district court's judgment. And you've offered no alternative ground to uphold a finding that the process was sufficient. That's correct. So in other words, if we think there's a property interest, do you lose this case on that ground? Well, we wouldn't lose the case. You would remand to the district court. Well, you lose the appeal. It's a remand. You would remand at least to the liberty interest claim, and we're prepared to deal with the consequences of that. So, sorry, then you're not asking us to affirm on the ground. I understand you'd rather us affirm on the ground of no liberty or property interest. Correct. If you lose on that point, would you rather have the remand that Judge Pan posited or the possibility of an affirmance on the ground stated by the district court? So the remand. Remand. And that follows from the proposition that we have asked the court not to. Well, you asked us to decide the other ground as a preferable ground. You don't want us to decide that. Correct. Okay. I appreciate that, and I know it's not your call, so thank you. Thank you. So, I'm sorry. No, I was just going to go to the merits of the liberty interest. Thank you. Unless you had a... Let's talk about reputation loss. The allegations in the complaint are pretty thin, right? But there is a general allegation that the defendants published. There's no question they terminated him. And then the plus is the defamatory statements, the allegedly false statements that harm him. And there's no question they released the OIG report. And they say they published through official channels for public review that he's the agent. So we have... I mean... I'm sorry. Go ahead. No, go ahead. I mean, we have lots of contemporaneous reports of which maybe we can take judicial notice. Your friend on the other side says just the CNN report. There's actually a lot more than that. There was a Senate Judiciary Committee hearing at which the director of the FBI named this agent as the special agent in charge subject to the... who was discussed in the OIG report. So the plaintiffs have not relied on that report. And I'm aware of it. So if they've waived any argument, that would be based on that report. And the complaint itself does nothing more than give you the threadbare recitals of the elements of the claim. And Iqbal clearly says that a plaintiff does not get the discovery merely by reciting the elements of the claim. The allegation in the complaint is that the defendants published through official channels all of these allegations against him. If the FBI director named him before the Senate Judiciary Committee, would that count as publishing through official channels the allegations against him? Right, it wouldn't for... because under the O'Donnell case, this court held that in order to state a Reputation Plus claim, the alleged defamation has to occur at the same time as the adverse personnel action. And the court made that clear that that's a requirement. So here... He was fired August 31, 2021, five years after the underlying events, two weeks before the Senate Judiciary Committee here at which the agent was named. So under O'Donnell, that timing is... You don't think that's contemporaneous enough? No, it is not, Your Honor, with respect. It's not. Because what O'Donnell says is that, of course, a mere allegation that the government has harmed somebody's reputation is not enough to state a constitutionally protected liberty. So what's required is some adverse employment action with that. And what O'Donnell says is that in order to get the plaintiff over that high hurdle to show an adverse employment action and harmed a reputation, it has to happen at the same time. And the district courts in this circuit have taken this seriously. In the Guinness case, cited in our brief, said the same thing. It took the court at its word and said it has to happen at the same time. And O'Donnell says, again, it's the combination of the two at the same time that creates the kind of stigma that is actionable. So you don't have that here, even under the facts you've alleged. And I think that is enough to defeat their liberty interest scam without... But is that the only opportune time? In other words, if Mr. Langevin is applying for employment with another federal agency, would this information be available to the federal agency and therefore create some later in time potentially actionable claim? My understanding is that would not change the facts, is that what you look at under O'Donnell is what is the alleged harm to reputation? What's the alleged public dissemination? When did that happen? When did the adverse personal action happen? And what's alleged here is that he was... And you can see he was dismissed. And did those happen at the same time? And that's all... But you also state in your brief that he has not alleged that he actually applied and was turned down an opportunity. So how does that square with what you just said if you're trying to suggest that you only have one opportune time, which is the time of the firing, that there was some type of defamation? So he had... Interesting question. He hasn't alleged that... Let's say somebody came in and alleged, or he alleged that, yes, I applied for a job down the line. And guess what? The FBI publicly defamed me at that time. So then the question would be, is the denial of a job based on that enough to create projected liberty interest? He hasn't put that issue in the case, so we haven't briefed it. I'm not prepared to tell you what the answer will be this morning because of that. But again, he hasn't targeted it, and you don't have to address it because he hasn't said that he's applied for a job. That's the best I think I can make of that. Can we infer the stigma? We've talked about reputation plus. On stigma, it's about what happens later when he applies for other jobs. No, on the one hand, that is an element of this strand of a liberty claim, and it's not in the complaint. I mean, on the other hand, they fired the guy for these extremely serious allegations leading to 70 young athletes being molested. I mean, he's never going to work in law enforcement again. That seems blindingly obvious. Can we draw that inference? Well, I don't believe the Orange case, which is the key case, creates any kind of what might be a futility exception to the requirement that somebody has to show that they've applied for a job and been denied it. So I think that's sort of the end of that. That's a bedrock requirement that he's got to plead and show, and he hasn't. And again, Orange is the key case. And the plaintiff uses the word hampered in the complaint, but this court's cases also say clearly that some stigma is not enough to create a protected liberty. So hampered sounds a lot like some stigma and far less than what a plaintiff has to plead in order to get over the high bar to show this kind of liberty. I believe that's all I have, so I'm happy to ask... I'll let you wind down if you want, just briefly. We would just ask the court to confirm. Thank you. We'll give you two minutes. Thank you. Very briefly, I do have a quote, Your Honor. It's the Crooks, C-R-O-O-K-S, from Mabus, M-A-B-U-S, at 845 Fed 3rd, 412. This court's decision in 2016, and it cites some previous cases. And what it says is, quote, generally, a claim of entitlement is not viable when a government agency wields significant or unfair discretion in determining whether to award or rescind a benefit or when an individual lacks an objective basis for believing that he or she is entitled to retain the benefit. And my only point in that in the property interest claim is that, and my intuition says that in that Texas case, someone who wants to visit a prison, I don't believe has a robust enough property interest because it's so transient for an objective observer to believe that that is a protected interest. A civil servant who's earning his income and has potential eligibility for pension would have. A reasonable person would say that he or she has an objective basis and an expectation that he or she will continue employment, or at least have access to due process, absent exigent circumstances. And that's how I would distinguish those two situations, and I believe my client has that for purposes of property interest. And my last point concerning liberty is that when you're stigmatized and your reputation is affected by claims of dishonesty in the law enforcement community, there's no further potential for employment as a law enforcement officer. That sounds right, but you didn't plead it. Thank you. Thank you. I appreciate your time. Thank you very much. Thank you. The case is submitted.
judges: Katsas, Childs, Pan